UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | )  CRIMINAL NO. 2:16-CR-100-DBH |
| | ) |
| ALFRED McINTOSH, JR., | ) |
| | ) |
| DEFENDANT | ) |

### ORDER ON MOTION FOR COMPASSIONATE RELEASE

I recently learned in United States v. Faucette, 2:13-cr-79-DBH-01, that the Department of Justice takes the position that a prisoner is not required to exhaust administrative appeal remedies within the Bureau of Prisons before filing a motion in court under the First Step Act, and may file the motion 30 days after submitting a request for compassionate release to the Warden, regardless of whether the Warden denied the request.  Gov't Resp. to Procedural Order, United States v. Faucette, 2:13-cr-79-DBH-01 (D. Me. Aug. 5, 2020) (ECF No. 266).

In this case, without knowing that the Justice Department believes exhaustion is not required, I earlier denied without prejudice McIntosh's request for compassionate release from prison because he had not exhausted administrative appeals.  Order (ECF No. 70).  But as I said in Faucette, the government can waive the exhaustion requirement, and I treat it now as having done so.  Second Procedural Order, United States v. Faucette, 2:13-cr-79-DBH-01 (D. Me. Aug. 11, 2020) (ECF No. 267).

I therefore **VACATE** the earlier denial that was based upon failure to exhaust and proceed instead to the merits of McIntosh's request for compassionate release.

McIntosh is 48 years old and imprisoned at FCI Schuylkill in Pennsylvania. I sentenced him on June 1, 2017, to 144 months (12 years) in prison for possession with intent to distribute methadone where one of his distributees died from the methadone.[1] (ECF No. 58). He has served about four years since his federal arrest in 2016. He says he is being treated at FCI Schuylkill for chronic obstructive pulmonary disease, prediabetes, hypertension, asthma, and retinopathy. Mot. for Compassionate Release (ECF No. 68). The Warden at FCI Schuylkill denied him compassionate release on May 15, 2020, telling him, "your medical history does not meet the criteria . . . regarding a Compassionate Release/RIS for inmates with medical conditions. You are currently able to independently adapt to activities of daily living and are able to perform self-maintenance activities in a correctional environment." Inmate Request to Staff Response at 1 (ECF 68-2). At that time, FCI Schuylkill had no "confirmed staff or inmate cases of COVID-19." Id. at 2. Now the BOP website shows it as having one prisoner recovered from COVID-19 and no active cases identified. COVID-19 Cases, Bureau of Prisons, https://www.bop.gov/coronavirus/# (last visited Aug. 18, 2020). The Warden has also said that McIntosh's "recidivism score of 'Medium' disqualifies you from consideration." Inmate Request to Staff Response at 2.

---

[1] That sentence was at the high end of the range established by a binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C).

2

Judge Woodcock of this District has laid out in detail the criteria for judicial relief of compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).  See, e.g., Order on Motion for Compassionate Release, United States v. Nygren, 1:16-cr-00106-JAW-1 (D. Me. July 22, 2020) (ECF No. 111).  I will not repeat them all, but focus on those relevant to McIntosh:  What do the factors of 18 U.S.C. § 3553(a) call for?  Do "extraordinary and compelling reasons warrant" the reduction he seeks?  See 18 U.S.C. § 3582(c)(1)(A)(i); Is McIntosh "a danger to the safety of any other person or to the community"?  See U.S. Sentencing Guidelines Manual § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).

McIntosh is justifiably afraid of COVID-19 given his health conditions.  But conditions at FCI Schuylkill appear to be under control.  And as I said at sentencing:

> the history and characteristics of this defendant are not hopeful.  He seems to be good when he's sober but he's not good when he relapses, and that seems to be more of the norm.  Mental and emotional health history for himself and his family, ongoing criminal activity up through 2012 involving theft, burglary, drugs, motor vehicle offenses, assault, et cetera.  And even after this tragedy in 2012 [referring to the methadone death] he struggled with drug usage up until the severe car accident and his arrest [in 2016].

Sentencing Tr. at 46-47 (ECF No. 65).

I conclude that the circumstances here do not present extraordinary and compelling reasons to reduce McIntosh's sentence effectively by two-thirds and that his recidivism risk does create a danger to the community.  As Judge Torresen said in a different case:

> Even if [the defendant] could establish extraordinary and compelling reasons for his release, reducing his sentence would be inconsistent with the § 3553(a) factors, including

3

> protection of the public.  I sentenced [the defendant] to a 235-month term of incarceration because of the seriousness of his drug offenses.  <u>See</u> 18 U.S.C. § 3553(A)(1).  Reducing [his] sentence by 70% would undercut the seriousness of the offense, respect for the law, and the need to deter future criminal conduct.  <u>See</u> 18 U.S.C. § 3553(a)(2).  Further, [his] presentence report shows a serious criminal record . . . .  Given his lengthy criminal record, it would be difficult to find that the safety of the community could be assured if [the defendant] were to be granted early release.

Order to Show Cause at 7, <u>United States v. Hunter</u>, 2:14-cr-00122-NT-1 (D. Me. July 21, 2020) (ECF No. 66).  Those observations apply here as well.  I therefore **DENY** the motion for compassionate release.

    **SO ORDERED.**

    **DATED THIS 18TH DAY OF AUGUST, 2020**

    /S/D. BROCK HORNBY
    **D. BROCK HORNBY**
    **UNITED STATES DISTRICT JUDGE**